Tucker, P.
These cases have been argued with very great labour and ability, and many points of commercial law have been learnedly discussed. According to my view of them, however, they turn upon a very few principles, and it will therefore be unnecessary to notice many things which have fallen from the bar in the course of the discussion. In remarking upon them, I shall follow the course of the counsel, in considering the case of May against Boisseau separately, in order to avoid confusion. The decision of it will in effect be a decision of.the other.
The action in the case of May against Boisseau is founded upon two notes negotiable at hank, the first of which was dated the 20th of November 1828, and fell due on the following 22d of January. It was for the sum of 4500 dollars, and was indorsed by Peter F. Boisseau and John F. May, for the accommodation of Edward II. Boisseau the maker. It was discounted accordingly. At maturity, a new note with the same indorsers was offered for discount, in order to retire the former; but the discount not being paid, the note was not discounted and passed to the credit of the maker, although there had been an order of the board for its discount. The consequence was that the first note was not paid off; and it was aecordirifdy protested. Due notice of protest was given to May, but it is admitted on all hands that due notice was not given to Peter F. *180 Boisseau the first indorser; so that he was discharged, unless a satisfactory excuse is offered for the omission. This excuse has been attempted. It is contended that as, on the day of the maturity, a negotiation was going on for the renewal of the note, which ultimately failed, the was absolved from the necessity of giving notice. It is admitted, however, that Peter F. Boisseau was not at the bank on the day on which the transaction took place, and that he remained profoundly Ignorant of all the circumstances until subsequent to the 26th of March following. He therefore had no actual notice of the offer of the note for discount, or of its final rejection. His case therefore neither comes within the principle of the decisions which recognize that notice may be waived, nor is it at all analogous to the case of Leffingwell v. White, 1 Johns. Cas. 99. What is the principle on which notice is waived ? It is that “ the consequences of neglect to give notice may be waived hy the person entitled to talce advantage of them.” Chitty on Bills 533.* The act then which is to operate a 'waiver must be the act of the indorser himself. It would be a solecism to permit the act of another to waive his right of insisting upon notice. Accordingly, in Leffingwell v. White, we find that upon the absconding of the maker of the note, the indorser himself, before it became due, informed the holder of the fact, requested delay, and agreed to give a new note for the amount. Now, without enquiring whether the case is to be sustained on the gyound of the existence of the negotiation, or on some other ground, it is observable that the indorser was here the negotiating party, admitting fully his responsibility, giving notice himself to the holder of the maker’s absconding, and asking indulgence. He had, then, full notice of every thing, the transaction having been conducted altogether by himself in person.
*181 \.ware of this difficulty, one gentleman has called to : ° his aid a supposed intendment ol the law, and another has ingeniously ensconced himself behind the doctrine of agency. It is said that upon the presentation of an indorsed accommodation note at bank, for the purpose of retiring a former note indorsed by the same parties, the law intends each party to the note to be present in bank and privy to the negotiation for the renewal. I cannot think so. Such an intendment, contrary to the fact in innumerable cases, would be the grossest injustice. It might have been expected that for so harsh a doctrine some authority would be cited, by which we should have been bound to adopt, against our moral sense, so revolting a principle. But no such authority is produced, and we are therefore still, at liberty to take for granted that he who merely places his name on a note for the accommodation of a friend, is not to be affected by transactions of which he knows nothing, and to which he is neither party nor privy. The truth is that he is not a party to the discount of the note. He is only collateral security for the payment of the note, if the maker fails, and the note is fairly dealt with. In business paper, the last indorser, who presents it for discount for his own benefit, is the contractor with the bank. He only is party to the transaction. The previous indorsers have nothing to do with it. They stand but as collateral security, and so far from being party or privy with the last indorser who offers the paper for discount, they are antagonizing parties. In accommodation paper, in like manner, the maker, for whose benefit it is to be discounted, is the only party seeking the discount. The indorsers are indeed collaterally bound, but they are not parties to the application. The maker offers the note for discount with their guarantee, indeed, and it is discounted upon their credit; but it is discounted for him, not for them. Their responsibility is limited by their indorsement, and nothing that the maker *182 can do in the negotiation for discount can add to their . . . responsibility or operate a waiver of their privileges. There cannot, then, be any just foundation for the notion that the indorsers are to be considered as present and parties to the transaction of the 22d of January, though they were in fact not present. Nor are they to be regarded as present by their agents, since they have nothing to do with the transaction j and even if they had, and if there was an agency, it was not an agency to waive the indubitable privileges of the indorser, or to do any act which might amount to such waiver.
Upon the whole, therefore, I am of opinion that, the indorser Peter F. Boisseau was discharged from his responsibility on the first note, by the omission to give due notice of the protest for nonpayment.
We now come to the note of March 26th 1829. That note was in fact drawn and indorsed anterioj|r to its date, and in profound ignorance, on the part of Peter F. Boisseau at least, of all the facts connected with the note of the 22d January 1829. He was ignorant that the attempt to negotiate that note had failed, ignorant of the protest of the note of November, and of the fact that he was discharged from his responsibility. These things, however, having come to his knowledge after the 26th of March, he addressed notices both to the bank and to May, warning the former not to negotiate or receive the note, and demanding of the latter that it should be returned to him. May however retained the note, and afterwards discounted it at the bank of Virginia in Petersburg. At maturity it was protested, and due notice was given to all the parties. May then paid it up, and now demands the amount, by this action, of Peter F. Boisseau as prior indorser.
I think it was conceded in the argument, as a general principle, that the indorser of an accommodation note may withdraw his indorsement at any time before it is discounted, unless rights for valuable consideration have *183 in the mean time attached in others. It could not fairly ... be denied. Asa general rule, the locus pemtentice is never taken away until the contract is complete ; and the decisions of this court leave no doubt that until the discount of accommodation paper, a note is but a blank piece of paper. In the ordinary banking transactions of the country, a series of indorsed notes of different dates are usually deposited for the purpose of renewal and continuance of the accommodation. They are placed in bank or in the hands of the maker, to be used for that purpose, in full confidence, at the time, of his solvency; yet I have never heard a doubt of the right of the indorsers to withdraw them or to strike out their indorsement, at any lime before discount, when the failing circumstances of the maker render such a measure prudent. Until the discount of the note of the 26th of May, therefore, the indorser Peter F. Boisseau had a right to withdraw his indorsement, to forbid the discount upon his credit, and to absolve himself from all responsibility; unless some circumstances can be shewn which deprive him of the benefit of this general principle.
Accordingly,his responsibility is attempted to be fixed upon the ground that on the 19th of March he received a deed of trust from Edward Boisseau the maker, by which he conveyed a very large property to a trustee to indemnify his brother Peter against his supposed responsibility for the previously indorsed notes, and for any other notes which he might thereafter indorse for the renewal and continuation of the former. It is not found by the case agreed whether the property conveyed was the whole property of the maker, nor is it found that it is adequate to the payment of the note, even if it be conceded that the note was to be discharged out of the trust subject in preference to any other liability of Peter F. Boisseau for the maker. These facts cannot be supplied by the court, if they are neces *184 gary for a decision of the case. Let us see, however, what is the effect of the deed of trust upon this action, even if both of those facts be found favourably to the appellant. I shall take them to be so; but for the sake °f Ae argument only,
That the indorser has a general right to withdraw his indorsement, is admitted; and if that right was destroyed by the operation of the deed of trust, it must be either by force of some binding covenant in the instrument, or because the conveyance of the whole property of the maker to the indorser, and to an amount adequate to the payment, placed him in the shoes of the maker, and obliged him in good faith to adhere to his indorsement.
First, then, was there any agreement on the part of Peter F. Boisseau to continue to indorse for his brother? I waive, as unimportant in this part of the case, the question whether such an agreement, in ignorance of the fact of his discharge, would bind him. And I am clearly of opinion that there is no such covenant in the deed. The passages which have reference to this matter are to be found first in the recitals, where it is declared that the maker was desirous of saving his indorser harmless from damage by reason of his previous indorsements, “ or any other which he may make for the purpose of continuing the accommodation.” And in the declaration of trust it is provided that whenever the indorser should be compelled to pay the notes already indorsed, “or any note which may hereafter be indorsed by him in order to continue &c.” Now these are the words of the grantor of the deed, not of the grantee Peter F. Boisseau. There is no covenant or engagement on his part to indorse; and even the language of the grantor implies not an obligation on the grantee, but merely the possibility of his renewing his indorsement. The word may is not imperative, but potential, and the clause was intended to provide not for what must hap *185 pen as a matter of contract, but for what might happen as matter of favour. It would be strange were it otherwise ; for there is no limit as to time, and consequently the obligation to renew, if it exists at all, has no limit but the life of the party; so that Peter F. Boisseau would have been bound forever to continue to indorse, and keep alive the accommodation, while the trust property was melting away in the hands of the maker.
Secondly, then, let us see whether the obligation to indorse is created by the mere fact that the whole of the maker’s property, and sufficient to pay the debt, was placed in the hands of the trustee for the indorser.
In considering this question, the case has been likened to that of Corney v. Da Costa, 1 Esp. Rep. 302. approved in Brown v. Maffey, 15 East 216. In Corney v. Da Costa the indorser took effects of the maker for his indemnity; and the court held that he was not entitled to notice of nonpayment. And in Brown v. Maffey it is said, it would have been a fraud in the indorser in the case of Corney v. Da Costa to call upon the maker, because, before the note became due, the maker had deposited effects in his hands to answer the amount of his indorsement, and therefore he had no right to complain of the want of notice. In Watkins v. Crouch & Co. 5 Leigh 522. this principle seems to have been recognized. In that case there was a deed of trust conveying real and personal estate to secure the indorser. The question was whether the assignment dispensed with the due presentment of the bill at the time and place of payment, which is essential to charge the indorser. In the consideration of the case, the court incidentally touched upon the other topic, and seem to have fully recognized the principle of Corney v. Da Costa. That case, therefore, I shall consider as well decided.
I cannot however perceive the analogy between this case and that of Corney v. Da Costa. There a party to the note, and hound for its payment, having received ef *186 fects of the maker for its discharge (which we must suppose he was empowered to make available to meet the note) was held to have dispensed with that notice which otherwise would have been necessary, and to have become fixed for the demand. Here it is insisted because an assignment of property, by way of indemnity and as collateral security only, has been made to one who by mistake was supposed to be bound, he must become bound against his will, and make himself principal debtor, although the property conveyed for his indemnity may not be available, and although he has no power to sell it, so as to meet the demand and save himself from protest. I cannot think so. Whenever the question fairly presents itself, I shall desire it to be considered how far a conveyance of real and personal estate, such as is made by this deed, has the effect of placing the indorser in the shoes of the maker, and of dispensing with that presentment of the note which in Watkins v. Crouch & Co. was deemed indispensable to bind him. Whether such estate, so transferred as collateral security, is to be considered “ available effects” within the principle of Corney v. Da Costa, was not adverted to in Watlcins v. Crouch Co. but it seems to me to be a matter deserving serious consideration. In such case, I should incline to think the remedy was only in equity, where the indorser had not been dealt with strictly by due presentment at the specified time and place. But in this case I think there can be no doubt. The mere transfer to a trustee for Peter F. Boisseau, of this property, consisting of estates that might require much time to convert them into available funds, cannot reasonably be construed to require him, without an express agreement on his part, to become in fact principal in this transaction; to bind himself where he was not before bound, and to take upon himself to provide for the payment, in the first instance, of a heavy demand. The estate .conveyed in trust, according to the *187 character of the instrument, remained in Edward Boisseau’s hands until the responsibility of Peter was fixed, and it was only held subject to his indemnity. All that good faith required of him, therefore, upon the discovery of his exoneration from liability upon the former note, was to transfer the indemnity (if required) to May or the bank, if they should shew themselves entitled to the benefit of it. But I cannot think it was his duty to indorse the note, and of course 1 do not doubt his power to recall the indorsement which was made under a mistake of fact. I am therefore of opinion that the negotiation of the note of the 26th March did not bind him, and that he is not chargeable for its amount in this action. The consequence must be an affirmance of the judgment.
The majority of the court, however, consisting of judges Brooke, Cabell and Brockenbrough, being of opinion that the judgments in both cases were erroneous, they were both reversed with costs, and judgments entered for the appellants respectively. In the case of May against Boisseau, the judgment entered was for the debt in the second, fourth and fifth counts of the declaration mentioned, with interest See. and costs. A few days afterwards, these last judgments were set aside on the motion of the appellee, and the causes directed to be reargued, upon the question whether the defendant was liable on the note of the 26th March 1829. The court being of opinion that if that note had been nothing more than one of the series of accommodation notes, made by Edward H. Boisseau, and indorsed by Peter F. Boisseau and John F. May for the maker’s accommodation, the defendant having received no consideration for his indorsement, the plaintiff could not have recovered thereon, inasmuch as the defendant, before the note was discounted at'bank, had retracted the authority to discount it which his indorsement gave, — the precise point *188 considered in the reargument was, how far the deed of trust of the 19th March 1829 supplied a consideration for the defendant’s indorsement, and restrained his right to retract the authority which he had given to discount the note.
Johnson, for the appellants. I. He referred to 1 Starkie on Evid. 358. and notes L. and 1. and 2 Starkie on Evid. 17. 18. 247. to shew that the recitals in a deed are evidence against the parties to it; and said that in this case, according to the true interpretation of the deed, it imported or proved an agreement between Edward and Peter Boisseau, or at least it was evidence of an agreement, that Peter should indorse the notes of Edward, in order that the bank accommodation might be continued to Edward; and with the other facts, was conclusive proof of such agreement. The objection that the word may is used in the deed can have no influence on the question ; for it is the appropriate word, whether the contract to indorse exist or no. As little can the objection avail, that such a contract is indefinite in time and unreasonable in its restrictions. A contract to indorse for renewal at the pleasure of the bank, upon good indemnity, is neither indefinite nor unreasonable. As to the alleged mistake in relation to the obligation of the indorsements, that cannot proprio vigore annul the deed, neither party asking it. And the deed being in force, the order of payment which it contemplates can be accomplished in no other way than by giving the bank debt preference over the administration debt.
II. Was the consideration for which the note was indorsed by the defendant, sufficient to bind him for its payment P The indorser alleges that his indorsement was voluntary; the holder, that it was for a valuable consideration, — the deed of trust. The indorser alleges that it was made to retire the note of January"; the holder, that it was to continue the loan or accom *189 modation at bank. As to consideration, see Chitty on Bills, ch. 8. p. 79-85. am. cdi. of 1836 ; as to failure of consideration, Id. pp. 86-90; when want of consideration is no defence, Id. pp. 90-92. The doctrine that a bill until negotiated is blank paper amounts only to this, that an accommodation bill, until it gets into the hands of a holder for value, creates no obligation. It rests for its foundation upon the common law maxim, ex nudo pacto non oritur actio. It does not mean that a bill must be discounted before it can become valid. A large class of valid bills are never discounted. The moment that a bill gets into the hands of a holder for value, it creates a valid obligation. In this case the essence of the contract between Edioa.rd and Peter Boisseau was a purchase, for value, of the right to use Peter's name, and pledge his responsibility to the bank and to subsequent indorsers. When this contract had been consummated by paying the consideration and making the indorsement, Peter could not arbitrarily retract it. If he could not retract it while the paper remained in the hands of Edward, he surely cannot after it is placed in the hands of a subsequent indorser, to be discounted; for if the subsequent indorser have taken it for value, then his rights are an additional objection. If he shall have taken it without value, then he is the agent of the maker, and rests upon his rights.
III. Does the mistake invalidate the contract, or impair the consideration for the defendant’s indorsement? It is said that to make a promise binding, the defendant must be informed of all the facts upon which the promise is founded. This is admitted in one class of cases, and one only; that is, where the existence of the fact of which the defendant was ignorant, would destroy the whole consideration of the promise, and leave it nudum pactum. The effect of ignorance of the facts on which the promise rests, is considered in Chitty on Bills, pp. 536-538. am. edi. of 1836. That ignorance *190 of a fact which goes only to part of the consideration . . ° J 1 will not avoid the promise, is an obvious deduction from the proposition that partial failure of the consideration does not invalidate the promise. The doctrine of covenants dependant and independent rests upon the same principle. As the failure to perform a condition precedent, that will furnish a good defence to the action, must be a failure in a matter which constitutes the basis or principal condition precedent, Chitty on Bills, same edi. p. 87. so the mistake which will invalidate a contract must be in a matter essential to its validity. Story on Equity, ch. 5. § 140. p. 155. § 141. p. 156. Ignorance of a fact which a party might have known by due diligence, will not entitle him to relief. Story, § 146. p. 159. And it is not every case in which ignorance of a material fact, without fault, will entitle the party to relief. Story, § 147. pp. 159. 160. 1 Fonbl. Eq. book 1. ch. 2. § 7. note t. page 106. note u. page 108. Equity will in general not relieve where the facts were equally unknown to both parties, if there were no fraud. 1 Fonbl. ubi supra, note t. Story, § 150. 151. pp. 163. 164. Jeremy on Equity, book 3. part 2. p. 358. In Glassell v. Thomas, 3 Leigh 113. where it was held that the'mistake of both parties was sufficient cause for rescinding the contract, it was also held that it must be rescinded entirely. He that seeks relief from his contract for want of consideration, or for failure of consideration, must restore what he has received. Chitty on Bills, am. edi. of 1836, p. 89. In the present case it would operate as a fraud, an odious fraud, to allow the indorsement to be withdrawn.
Leigh, for the appellee. I. There is not a word in the deed that can be tortured into a covenant on the part of Peter Boisseau to indorse the note the next time, or at any time after. It merely shews that the parties, supposing Peter Boisseau bound as indorser of the second note, and knowing it might be a convenience both *191 to the maker and indorsers to renew, therefore entertained an expectation that Peter Boisseau might renew,— migbt find it his own interest to renew. But supposing the deed imports an agreement, the whole must be taken together to ascertain its meaning and effect. What then is its meaning ? It is, that Peter Boisseau being bound as indorser of the note of the 22d January, and therefore agreeing to indorse a note for the renewal thereof, the indemnity is given him. And on this agreement, what duly was there on Peter Boisseau to indorse, if he was not bound by the note of January 22d, — if he had no interest to renew and continue the accommodation? Again, supposing the deed to import an agreement on the part of Peter Boisseau to indorse for renewing the accommodation to Edward Boisseau indefinitely, and to indorse whether Peter Boisseau was bound for the debt due on the former note, or discharged from liability thereupon; still it was an agreement to indorse for renewing and continuing the accommodation to Edward Boisseau; whereas the third note was not discounted at Edward Boisseau's request or for his accommodation, but the discount was procured by May, and the proceeds applied to pay the note due on the 22d January. It was a discount for May's accommodation, and was to charge Peter Boisseau with a debt from which he had been discharged.
II. The indemnity, it is said, binds Peter Boisseau to indorse, and abide by the indorsement, and then his indorsement entitles him to the indemnity. Now, besides that the court cannot know how far the indemnity is adequate, the question whether Peter Boisseau is entitled to it or no, is a question in which his co-cestuis que trust are interested, and a question which can only be determined in a suit in equity to which they are parties. Peter Boisseau cannot, if he would, sacrifice their rights. But if there be a consideration for indorsing, it is given by Edward Boisseau. If Peter Boisseau be bound to in *192 dorse,,he is bound to Edward. Yet Edward has never complained. And neither May nor the bank can be subrogated at law to the rights of Edward Boisseau under the supposed contract. The argument as to consideration answers itself. It is admitted that Peter Boisseau js not bound to indorse the new note, nor prevented from retracting his indorsement, but by reason of the indemnity given him by the mortgage; and it is admitted also that he is not entitled to indemnity under the mortgage, but by reason of his indorsement.
III. Peter Boisseau made no agreement to indorse, under the actual circumstances. Whether there be a partial ignorance of some material facts, or a total ignorance of all the facts, the contract is invalidated. Chitty on Bills, am. edi. of 1836. p. 533. et seg. p. 541. note.
In the case of May against Boisseau, the judges delivered their opinions as follows.
Brockenbrough, J.
The question which has been reargued, and which is now to be decided, is whether a recovery can be had on the note declared on in the second, fourth and fifth counts. After the first decision was made, I had such strong doubts of its correctness, that I should have applied for a reargument, if it had not been accorded to the counsel for the appellee. The additional arguments which we have heard, and further reflection, have satisfied my mind that the opinion which I have heretofore given is erroneous, and I will assign as briefly as I can the reasons for the judgment which will be rendered.
The note bears date on the 26th March 1829, and was made by Edward H. Boisseau to Peter F. Boisseau, and by him indorsed to John F. May, who also indorsed it. In the agreed case it is stated that this was an accommodation note, made and indorsed for the benefit *193 of the maker. Although a negotiable note on its face imports a debt due from the maker to the payee, and the indorsement imports a debt from the first indorser to the second, yet it is agreed on all hands that an accommodation note is not available as a security for money, until it is issued or negotiated to some real holder for valuable consideration. Whitworth v. Adams, 5 Rand. 342, 415. Downes v. Richardson, 5 Barn. & Ald. 674. Until such note is negotiated, it is a mere blank piece of paper, in no manner binding on either maker or indorsers. Under ordinary circumstances, he who indorses an accommodation note has a right to retract his indorsement at any time before it is negotiated. His consent to be indorser is necessary to make him such; he cannot be compelled to indorse whether he will or no ; and as the note is a mere blank piece of paper until it passes into another’s hands for valuable consideration, it follows that he has the same right to retract the indorsement already made, as he had to refuse his indorsement in the first instance. In this case Peter F. Boisseau did retract his indorsement, as far as he had the physical power to do so, before the note was negotiated. On the 16th April, by note in writing addressed to John F. May, who had possession of the note (but into whose hands it had not passed for valuable consideration) he demanded possession of it, and notified him not to use it; and he warned the bank not to discount it; notwithstanding which, it was discounted afterwards by the bank at the instance of May. Having retracted his indorsement under those circumstances, he was not bound by it, unless there was some legal obligation which restrained him from withdrawing it. It is contended that the acceptance of the deed of the 19th March 1829 imposes that obligation on him. Has it that effect ?
In my examination of the terms of that deed, I cannot find any thing that amounts to an express promise *194 on the part of Veter F. Boisseau to indorse at any future time a note for his brother Edward. The recital of the deed states that “ whereas he stands bound as indorser for Edward on a note of 4500 dollars, executed in January last (that is, on the 22d of January 1829) which has been discounted for the accommodation of the said Edward by the bank of Virginia, and which is renewable, according to the course of business in the said bank, at the end of every sixty days, at the pleasure of the president and directors of the said bank; and whereas the said Edward, is honestly desirous of completely indemnifying and saving harmless the said Veter from all loss and damage by reason of his indorsement aforesaid, or any other which he may make for the purpose of continuing the accommodation of the said bank to the said Edward,” &c. And then the deed proceeds to convey. The recital commits sundry mistakes. It states that Veter stands bound as indorser on the note of the 22d January, when he did not stand so bound; for that note was at that very time a blank piece of paper, having no vitality in it. It states that the said note had been discounted at bank, when in fact it had not been discounted at all. It is true that the said note had been made and indorsed on the 22d January, the day on which the former note of the preceding November had arrived at maturity, for the purpose of being discounted ; but it was not discounted, for the reason set forth in the case agreed. The recital then states that the said note is renewable at the end of every sixty days, at the pleasure of the bank. I shall not be guilty of the hypercriticism of objecting that a thing which never had existence cannot be renewed. I know that the meaning of the recital is, that the credit obtained by Edward of the bank for 4500 dollars (of which the note of 22d January was believed to be the living evidence) is renewable at the end of every sixty days by a new note, at the pleasure of the bank. The plain meaning of the *195 term renewable is, that the maker and indorsers may execute and indorse another note of the same character and amount, if they think proper, at the end of every sixty days, according to the course of bank accommodations. It does not mean to be renewed at all events, whether the maker and indorsers choose to renew or not; but to be renewed if all the parties, maker, indorsers and the bank, choose to renew and discount it. Here then is contained no promise on the part of Peter F. Boisseau, to indorse another note on the 26th March, or at any other future time.
The same construction must be given to the declaration of trust. That says, “ that whenever the said Peter F. Boisseau shall be compelled or called on to pay all or any part of the said negotiable note, or all or any part of any note or notes which may hereafter be indorsed by the said Peter, in order to continue the accommodation of the said bank, or any part of it, to the said Edward, then” &c. The words, “that may hereafter be indorsed by the said Peter,” can only be construed to mean, “which the said Peter may hereafter indorse, giving to him the full liberty to indorse or to refuse his indorsement:” and the same construction would necessarily be given if the word were shall, instead of may. It contains no promise whatever that he will indorse.
Can, then, a valid promise to indorse be implied from the indemnity intended to be furnished by the deed, against loss by the indorsement which was supposed then to exist, but did not, or by the indorsements which might thereafter be made in continuation of the notes so supposed to exist? I think not. It must be observed that there is a great difference between an absolute conveyance, and a mere conveyance to a trustee, as an indemnity. In this case the property was not put into the hands of Peter Boisseau to pay off these particular debts, but into the hands of a trustee, as an indemnity. It was designed, too, to indemnify not only against *196 these supposed indorsements, but against various other suretyships in which Peter was bound for Edward, and to secure a debt due from Edward to Peter, and a debt and an annuity due from Edward to his mother Priscilla Poisseau. The property was large, and probably was ap tjjat gTantor owned; but it was to be appropriated not merely to indemnify against the supposed indorsements (which were indeed to have no kind of priority) but to secure all of the responsibilities enumerated in the deed, pari passu: so that there might not be a sufficiency of property embraced in the deed, to indemnify the defendant. It is not at all probable that if Peter Boisseau was anxious to indemnify himself completely, and had known at the date of the deed that he was at that time discharged from his former liability as indorser, he would have again voluntarily indorsed, in consideration of his taking an indemnity which might prove wholly inadequate.
In the case of Corney v. Da Costa, 1 Esp. Rep. 303. the actual indorser of a note took from the maker, before the note became due, effects to the amount of the note, for the purpose of paying it. In that case it was decided that the indorser was not entitled to notice of the dishonour of the note. The judge (Bzdler) who tried the cause said, that “ Da Costa had made himself liable at all events, and being solely liable, he could not avail himself of the want of notice.” And Bayley, in his treatise on bills, p. 202. in commenting on this case, says that the indorser, having taken effects of the drawer to answer the note, “ is not entitled to notice; he is the proper person to pay it, and would be entitled to no remedy over on making payment.” In that case, then, the indorser, having taken effects to meet the demand, loses his character of indorser, and becomes the maker.; he is no longer collaterally, but is absolutely bound. We are left to infer that if he had received effects insufficient to pay the demand, he would still *197 have been looked on as indorser, and would have been entitled to notice; because, for the amount of the denciency, the drawer would certainly still have been liable to him, and the indorser would have been entitled to his remedy over for that deficiency, on making payment for the whole. So I think the inference is clear, that if Da, Costa had not taken effects into his own hands, which he might immediately have applied to the payment of the note, but had merely taken a deed to a trustee, which could not be applied directly to the payment of the note, but only to the indemnification of Da Costa in case he should be compelled or called on to pay off the note from his own funds, then he could not have been adjudged to be absolutely bound, and would have been entitled to strict notice of the dishonour. In such casti Duller could not have said that Da Costa had made himself liable at all events, and that he was solely liable. Nor could Bayley have said that he was the proper person to pay it; for surely the drawers would have been still the proper persons to look to for payment, and the indorser could only have been still collaterally bound.
In the case before us, there is still less reason to apply the rule of Corney v. Da Costa. If Peter F. Boisseau had, on the 19th March, received from Edward property sufficient to pay off the note, and received it for that purpose, and then had endorsed the note of 26th March, that would have been a good consideration to make him liable on it as indorser, or perhaps as principal. But it cannot bo so, when he had no control of the fund till he should first be compelled to pay the note himself. And much less could it be so considered, when the fund was placed in the hands of the trustee to indemnify him and another against other responsibilities, and to secure them on account of other debts, which other responsibilities might absorb the greater portion of the fund.
*198 The indemnity is given to protect the person supposed to be bound, from all loss in consequence of his being bound: it cannot serve the double purpose of creating the obligation, and then of protecting him from the obligation so created. It is reasoning in a circle, as ¡.pg counsei for the appellee remarked, to 'say that he is bound to be indorser in consequence of being indemnified, and indemnified because he is bound.
But it was supposed by myself on the former argument, that there was a fraud in Peter Boisseau’s withdrawal of his indorsement, under the circumstances; ■being himself protected, and leaving the second indorser wholly without protection. I am now satisfied ■that Peter Boisseau cannot be charged with fraud on that account. In the first place, it is not certain that he himself is adeqautely protected; there may not be a sufficiency of property to protect him against the other heavy responsibilities; and during that uncertainty, it is a matter of prudence in him to require the trustee to hold on upon the fund. And as to injuring May by withdrawing the fund, so as to prevent the lien of any judgment which May might obtain, or execution which he might issue, it is sufficient to say that Peter Boisseau was not legally bouud to take care of May ; fit may have been unkind in him not to do so, but nothing more. Nothing is more usual than for a debtor to prefer one creditor to another, without the smallest suspicion of fraud attaching either to him or to the creditor.
It cannot be made a question in this cause, whether May can be let in by a court of equity to a ratable share of the trust fund, on the ground of the intention of the grantor to indemnify him incidentally, as the last indorser of the note. If he should apply to the court of equity, perhaps his claim may be resisted by the other sureties in the two administration bonds, on the ground that as Peter Boisseau was not bound to indorse, he has no indemnity as indorser under the deed, and that at *199 all events the other responsibilities have a priority over the indorsements. But whether the claim of May could be successfully resisted in equity or not, he has no sufficient ground to charge Peter F. Bossieau as indorser in a court of law.
On the whole (the court having heretofore unanimously decided that the plaintiff could not recover on the first and third counts) I am of opinion that the judgment be affirmed.
Cabell, J.
I have often felt, in my own experience, the truth of the observation that it is incident to man to err. But although liable, too liable, to errors of opinion, I hope I shall never be disposed to shut my eyes against any light that may be calculated to exhibit them as errors ; and that, receiving the light, I shall he ever ready to feel and to acknowledge its influence.
In the opinion which I delivered in this cause after the first argument, I expressed my conviction that Peter F. Boisseau was not liable for the note of the 20th of November 1828, but that he was liable for that of the 26th of March 1S29. My opinion as to his responsibility on the lastmentioned note was founded on the supposed fact, that his indorsement of that note was not only the consideration of the indemnity provided for him by the deed of the 19th March 1829, against any loss on account of his indorsement, but was also the consideration of the indemnity provided by that deed for numerous other responsibilities previously incurred by Peter F. Boisseau for his brother Edward; and also of the security provided by the same deed for the payment of the debt due by the latter to the former. And if I still believed that such was the fact as to the consideration for the indorsement, my opinion as to the responsibility of Peter F. Boisseau would remain unchanged.
But I am now satisfied that the consideration for the indorsement did not extend beyond the liability for the *200 indorsement; that it did not extend to the other liabilities set f°rth in the deed of the 19th March 1829; and that, under the circumstances which occurred subsequent to the indorsement, P. F. Boisseau is not responsible for the note of the 26th March 1829. And I shall now pVOceed, without farther reference to my fprmer opinion, to state the grounds of that which I now entertain.
And first as to the consideration for the indorsement.
Although the case agreed states the purpose for which the note was indorsed, namely, “ the renewing and continuing, according to the usages of the bank, a debt of 4500 dollars which was due from the said E. H. Boisseau” to the bank, yet it is wholly silent as to the consideration or motive which induced the indorsement; except so far as it may be collected from the deed of the 19fh March 1829, which is made a part of the case agreed. It is to this deed, therefore, that we must look for the consideration of the indorsement. And here I readily admit that in looking into the deed for this purpose, we must look into every part of it, and particularly into its recitals.
The deed recites that P. F. Boisseau stood bound as indorser for E. H. Boisseau on two negotiable notes, which had been discounted for the accommodation of the said E. H. Boisseau by the bank of Virginia at Petersburg, one of which was for the sum of 4500 dollars and the other for the sum of 1200 dollars, both of which notes were renewable, according to the course of business in the said bank, at the end of every 60 days, at the pleasure of the bank; that P. F. Boisseau was also bound as the surety of the said E. H. Boisseau in two administration bonds, in one forthcoming bond, and in several other bonds and notes of various amounts not particularly recollected; that E. H. Boisseau was indebted to P. F. Boisseau in the sum of 250 dollars, and to mrs. Priscilla Boisseau in the sum of 360 dollars, and *201 was also bound to pay the said Priscilla Boisseau an an- . ,. in /» . nmty of 66 doilars 66 cents tor and during her natural life. After reciting all these liabilities of P. F. Boisseau, and all these debts due from E. H. Boisseau to his brother and to his mother, the deed proceeds : “ And whereas the said E. II. Boisseau is honestly desirous of completely indemnifying and saving harmless the said Peter F. Boisseau from all loss and damage by reason of his indorsements aforesaid, or any other which he may make for the purpose of continuing the accommodation of the said bank to the said E. H. Boisseau for the said two sums of money, or any part of them, or either of them, and as security for the said E. II. Boisseau as aforesaid; and whereas the said E. II. Boisseau is justly desirous to secure to the said P. F. Boisseau the said sum of 250 dollars with all interest due and to become due thereon, and to the said Priscilla Boisseau her annuity aforesaid during her life, and the said debt of 360 dollars with all interest that shall accrue thereon: now this indenture witnesseth that the said E. II. Boisseau, for and in consideration of the sum of one dollar current money &c. to him in hand paid by &c. hath given, granted” &c. These are all the recitals of the deed; and I ask if there is a single circumstance in any of them, from which we can even infer that the indorsement of the note was not only the consideration for the provision made against loss by reason of that indorsement, but moreover for the provision made for all or any of the other liabilities or debts mentioned in the deed ? So far as motive or consideration is concerned, the deed places all the liabilities and debts on the same ground, namely, the desire of E. H. Boisseau to provide for all and each of them. We can no more say that the indorsement of the note was the motive or consideration for the provision made for the other liabilities and debts, than we can say that the other liabilities and debts were the consideration for the provision *202 made for the indorsement. Each and every liability and debt was the consideration for the provision made for it, and for nothing else. I feel confident that the indorsement of the note was not the consideration for ^ provision made for the other liabilities and debts mentioned in the deed.
Such being the fact as to the consideration of the indorsement, I come now, in the second place, to enquire as to the responsibility of P. F. Boisseau, under the circumstances which have occurred.
It is expressly stated in the case agreed, that the original note was made, indorsed and discounted for the accommodation of the maker; and that all the subsequent notes were made and indorsed for the purpose of continuing the debt created by the original note, and for no other. Indeed the case agreed, after having stated that the original note was made, indorsed and discounted for the accommodation of the maker, says in express terms that the note in question “ was in like manner made, indorsed and offered lor discount as before that is, for the accommodation of the maker.
It is universally admitted that a note made and indorsed for the accommodation of the maker, is as blank paper until it is discounted or negotiated. And the terms discounted and negotiated, are not to be taken in a strict or technical sense. I understand the rule to be, that a note thus made and indorsed is as blank paper until it comes into the hands of some person who has given value for it; but that from that moment it becomes a valid and available note. Under this rule, I should hold this note, indorsed as aforesaid by Peter F. Boisseau, to be a valid and available note in the hands of E. H. Boisseau the maker, if he had paid to P. F. Boisseau a pecuniary premium for his indorsement, or if he had given him indemnity for his other liabilities, as and for the consideration for indorsing the note. But it does not appear from the case agreed, that he did either of *203 these things. Did he give value for the indorsement, in any other form or shape ? It is true, that, in consideration of the indorsement, he has given him collateral seeurily against any loss or damage growing out of the indorsement. But where is the value given by Edward or received by P. F. Boisseau for the indorsement? There is nothing in this case but indemnity against the possible consequences of the indorsement; and that, in my opinion, is a different thing from that value which the law requires to make the note a valid and available note in the hands of the holder.
There being, then, no value given by Edward or received by P. F. Boisseau for the indorsement, the latter had a right, as the necessary consequence of the rule above mentioned, to restrain the negotiability of the note at any time before it passed into the hands of some person who had given value for it. It is of no moment that the parties expected and intended that P. F. Boisseau should indorse the note, and that, in pursuance of this intention, he did in fact indorse it. For the law knows no difference in accommodation notes, before indorsement and after. Indorsement without value gives no validity to the note in the hands of the indorsee; and it may be withdrawn, or the negotiability of the note restrained, at the discretion of the indorser, at any time before the note is passed oil' for value.
As between E. II. Boisseau and his- brother Peter, I have no doubt that the latter had the right to put an end to the use of the note.
It remains to be considered whether Peter F. Boisseau had a right to restrain the negotiability of the note after it got into the hands of May. This must depend upon the terms and consideration on which May acquired the note. If he can be regarded as a holder for value, the right to negotiate it unquestionably existed. But he paid nothing for it; he did not take it in payment of a debt due to him, nor as security for a debt due to him, *204 nor even as countersecurity against an existing liability. He took it on no such contract, express or implied. The case agreed shews that he took it solely for the purpose of indorsing it for the accommodation of E. H. Boisseau, and that it was indorsed by him and offered for discount, for the same purpose. Therefore he did not take it for value; and this settles the question as to the power of Peter F. Boisseau over the note.
This case cannot be assimilated to that of Corney v. Da Costa. There, the note was, in its origin, for valuable consideration. Here, the note was made and indorsed solely for the accommodation of the maker. There, effects to the amount of the note were placed in the hands-of the indorser, to enable him to meet the payment of the note at maturity. Here, property is conveyed to a trustee, as collateral security, to be sold by the trustee after the indorser shall have paid the note or shall have been called on to pay it. The question there was as to the necessity of notice to the indorser | and it was held that he was not entitled to it, he having made himself the payer of the note. Here, the question is as to the power of an indorser of a note, made and indorsed for accommodation of the maker, to restrain its negotiability before it has been passed off for value. And I am of opinion that he possesses the power, and that, having exercised it, he is .discharged from all responsibility; and consequently that the judgment must be affirmed.
As to the right of May to subject the property in the deed of trust to his indemnification, that is a question for a court of chancery. I have no hesitation, however, in declaring my present impression that he has such right.
Brooke, J.
The error in this case, I think, has been in considering the note of the 26th March, indorsed by the defendant, to be a blank piece of paper, no value *205 having been paid when the defendant gave notice to the bank, and the second indorser May, that he recalled his indorsement. The principle that an accommodation note, until value is paid for it, is a blank, has been long settled. It was, in effect, so settled when lord Mansfield said, in one of the cases, that a bill of exchange, until value was paid for it, was of no effect. And in Taylor adm’r &c. v. Bruce, Gilm. 42. and Whitworth v. Adams, 5 Rand. 338. in this court (first by myself in Taylor adm'r Spc. v. Bruce, and afterwards by other judges) such a note has been pronounced to be a blank. But had no value been paid on the note of the 26th March, when the defendant attempted to recall his indorsement ? By the agreed case it appears that the object of all the parties to these notes, as agreed upon, was to accommodate the drawer Edward Boisseau, and continue the loan to him as long as was convenient to the bank; and it was for that purpose that the defendant and May indorsed the notes of the 20th of November and 22d of January, and the note of the 26th of March. By the agreed case it appears that this loan of the amount of the several notes was continued by the bank to the drawer of them; though the first note was protested, the discount not having been paid, and the second note was refused to be discounted for the same cause. But all the time, the loan was continued to the drawer; which fulfilled the object of the parties. It was with this view, to continue the loan, and at the same time to indemnify the defendant against this and other liabilities for his brother Edward Boisseau, that the latter executed the deed of trust; which was signed and sealed by the defendant, thereby manifesting his agreement to the terms of it, one of which was that he should continue to indorse these notes. Notwithstanding the criticisms of the bar upon this deed, I cannot understand it in any other sense. The indorsement of the note of the 26th of March by the defendant is in pursuance of *206 this construction of the deed. I shall not enter into the question whether this deed was full indemnity to him for all his liabilities. All I insist on is that it was a consideration, a value, for his indorsement of the note of the 26th of March, though there were other considerations for the deed. The argument to shew his and the grantor’s ignorance, at the time the deed was executed, of the fact that the defendant was discharged of his liability on the protested note of the 20th of November, the bank having failed to give him notice of the protest, admits that but for this ignorance the note of the 26th of March was indorsed in pursuance of the deed of trust, and for value. Why plead ignorance of this fact, if he was not bound to indorse by the deed ? Let us see how this ignorance was to affect the case. Edward Boisseau certainly regarded the liabilities of the defendant on these notes, ,and his future liability as indorser, as the consideration on which he conveyed (I may say) all his property to a trustee, to indemnify the defendant. But he was ignorant of the fact that the liabilities of the defendant were not as great as was supposed when he executed the deed, as the defendant was discharged from his liability on the note of the 20th November, by the failure of the bank to give him notice of the pi’O-test. Edward Boisseau does not complain of this, and surely the defendant cannot object that his liability was less at the time he accepted the deed of trust, than was supposed by himself and the grantor; and the failure of part of the consideration which he paid for the deed could not be complained of by him. To insist, then, on his ignorance of this fact, is a mere pretext to get rid. of his liability as indorser of the note of the 26th March. I say a pretext; because it is not a fact agreed that he was under such ignorance at the time he indorsed the note of the 26th of March, nor does he allege or hint the fact of such ignorance in his notice. As regarded the grantor in the deed, the defendant *207 could not, then, recall his indorsement. He had accepted the deed, not as collateral security, but as a direct engagement to indorse the note. How does the matter stand as regards May, the second indorser ? According to the agreed case, he had united with the defendant in indorsing these notes for the accommoda- ° # tion of his brother, and to continue the loan to him. It cannot be supposed that May would at any time have been the sole indorser of the notes. It does not appear that he had any interest in the loan. The note of the 2Gth of March was sent to the bank to be. indorsed by May, and to be discounted; and on the 16th of April the defendant gave the notice to the bank and May, for the purpose of recalling his indorsement. The bank refused to discount the note, and May paid the amount, and the note was delivered to him. May was, at the time, liable on the note of the 20th of November, and Edward Boisseau, tire drawer, responsible to him. Having taken up the note of the 26th of March, which was intended to continue the loan on the previous note, Edviard Boisseau was his debtor to that amount; and unless the defendant was at liberty to recall his indorsement as to Edward Boisseau, he could not recall it in good faith as to May. I think this transaction is not to be considered on mere technical ground. These accommodation notes are of late date; and though until negotiated they are considered as blank, the treatment of them, and the arrangement of parties respecting them, must be considered with a view to the .fairness of the whole transaction. The defendant having indorsed the note in pursuance of the deed, and the grantor being, as drawer of the note, indebted to May, the defendant could not insist that no value had been paid him for the indorsement. He was bound to the drawer to indorse by the deed, and the drawer was bound to May for the note; and if he had no right to recall his indorsement as to the drawer, he could not recall it as to May *208 the second indorser. I have been surprised that any notice has been taken of the case of Watkins v. Crouch & Co. 5 Leigh 522. No two cases are more unlike than that case and this. In that case the deed of trust was executed long after the note was negotiated, and was intended as collateral security to the indorser; and the only question as to the effect of it was, whether it dis- ' pensed with the presentation of the note for payment, at the place and on the day it fell due, and also with notice of its protest. I thought that, with other facts in the case, it did. A majority of the court thought otherwise. I had no idea that it placed the indorser in the shoes of the drawer, as in the case of Corney v. Da Costa. But I cannot see, in this case, the distinction that has been taken. I cannot see that indemnity to an indorser, for previous and subsequent indorsements, is not as valuable a consideration for indorsing a note, as money paid. By signing and sealing the deed, he made the recitals in it his own, as well as the grantor’s; and if I can understand them, he was directly and not collaterally bound to indorse the note in question. And though the property did not pass to him, yet he consented that it should pass to the trustee for his indemnity. That the deed was a consideration for the future indorsement of notes to continue the accommodation of the bank to Edward Boisseau, is plainly declared in the following words: “ Whenever the said P. F. Boisseau shall be compelled to pay, or called on to pay, all or any part of the said negotiable notes, or all or any part of any notes or note which may hereafter be indorsed by the said P. F. Boisseau, in order to continue the accommodation of the said bank, or any part of it, to the said Edward H. Boisseau,” See. This, and the further indemnity against loss upon the other liabilities provided for in the deed, was the consideration paid to P. F. Boisseau for his indorsements. It was of great value to him to get indemnity against all his responsibilities for *209 Edward Boisseau. It was the object of the latter to provide for the payment of all his debts, and more especially bis bank debts, as they are first provided for in the deed. But if P. F. Boisseau is not responsible on the note of the 26th of March, it is not provided for by the deed, and the whole property being passed by the deed as to Edward Boisseau, it must go unpaid, contrary to the object of the deed. But let us suppose the deed out of the case, and see whether this note can be considered as a blank when it was delivered to the plaintiff’. From any thing in the agreed case, it cannot be inferred that the plaintiff ever meant to be the first indorser on these notes, but the contrary. When the note was sent to bank to be indorsed by him, he was responsible for the drawer on the protested note, having had due notice. If he paid the note, Edward Boisseau was his debtor to that amount. Could it be said that the drawer might recall the note as a blank note? As to him, was not the note negotiated when it carne to the hands of the plaintiff? If so, it was not a blank nolo when the defendant attempted to recall his indorsement. Upon the whole, considering that the plaintiff’ had been the second indorser on the two previous notes for the accommodation of the brother of the defendant, who was the payee and first indorser, it does seem to me that the attempt of the defendant, after he had obtained indemnity on this note, to escape the payment because the bank had failed to give him notice of the protest of the note of the 20th November, and to fix the debt on the second indorser, so as to get, tinder the deed, a larger indemnity against his other liabilities therein provided for, was a fraud. I think he ought not to escape. The judgment should be reversed, and entered for the plaintiff.
Tucker, P.
I have found no reason, on the reargument of this case, to change the opinion I formerly *210 entertained. Confirmed as I am in the conviction that the deed in the proceedings mentioned contains no agreement on the part of Peter F. Boisseau to indorse, and that no such obligation can be implied from its terms, I am not less satisfied that if there had been such an agreement, it was entered into under a mistake, and that the appellee had a right, at any time before it was carried into execution, to correct the error by retracting his engagement.
That a contracting party has the liberty to retract before any step is taken towards performance, upon discovering a mistake in a matter material to his engagement or forming an essential consideration for it, seems not to have been denied. It is a principle too familiar to require authority for its support. Whatever difficulties may exist in the rescission of executed contracts, no difficulty arises in refusing to compel the specific performance of a contract entered into under a plain mistake as to a material fact. In such a case specific execution is never decreed, though the court will take care that the contracting parties are placed in the condition which they occupied before the contract. 1 Mad. 320. Clowes v. Higginson, 1 Ves. & Beam. 524, 527. Townshend v. Stangroom, 6 Ves. 328. Mortlock v. Buller, 10 Ves. 305. Willan v. Willan, 16 Ves. 72, 82.
That the agreement in this case was entered into by Peter F. Boisseau in utter ignorance of the transactions of the 22d of January by which he was discharged from all responsibility, is expressly found by the case agreed; and it remains then to enquire whether this ignorance was of a matter which materially affected the contract for subsequent indorsements. Now, nothing seems more clear than that the false impression of his being already liable as indorser, was the very ground upon which he made the promise, if promise was made at all. For his liability is recited in the deed; and if he was already bound, he had strong motives to *211 continue his indorsement, in consideration of receiving Indemnity against loss. But if he was not bound, there was every motive (except that of fraternal interest, ■which the court cannot estimate) to decline the indorsement, which would subject him in the first instance to the payment of the heavy debts of his brother, and leave him to the slow, uncertain and unsatisfactory indemoify of the deed of trust. He must have stood the brunt of the demand, and have sustained all the sacrifices consequent upon it, while the deed would at most only have secured repayment of the amount, without redress for losses incurred and sacrifices unavoidable. Placed in the like situation, I should have considered the fact of existing liability as that which should determine the course I ought to pursue ; and I cannot therefore but believe that Peter F. Boisseau’s ignorance of his liability was a material consideration for any subsequent promise to indorse the notes of his brother Edward.
It seems to be considered, however, that by accepting the trust deed for his indemnity, there was a moral duty or obligation resting upon him to indorse. I do not perceive it. If the deed did not bind him to indorse, and he did not indorse, the provisions for his indemnity were inoperative and void; the rights of Edward Boisseau in the property (of which he still held possession) were not encumbered, nor could they be disturbed; and the refusal to indorse had the effect therefore, at once, of releasing or rather, of annihilating all claims of Peter F. Boisseau under that clause of the instrument. Quoad that matter, Edward was at once replaced in statu quo ante; and as to the rest, he had no right to be so replaced. For it is not found, nor does it appear, that the security for the other responsibilities was onfy given in consideration of an agreement to indorse. The contrary appears, since other persons are secured besides Peter F. Boisseau.
*212 But the case has been likened to that of Corney v. Da Costa. I cannot perceive the resemblance. In Corney v. Da Costa, the party was bound as indorser. He received funds with which to take up the bill, and was held to have no title to notice of protest. But here peter F. Boisseau is not bound at all; and it is demanded that he shall become bound, because he has received collateral security to indemnify him in case he should indorse. Surely there is no parallel between these cases. The indorser who had received funds with which to take up the bill was properly held not entitled to notice, because notice would have been a vain thing. He had in effect received the amount of the bill, and the payment out of the drawer’s funds was due from him, notice or no notice. As Bulles-, J. said, he was liable at all events. He was indeed “ solely liable.” He made himself principal debtor by receiving the funds. But in this case, if P. F. Boisseau did not bind himself to indorse, how can his taking a deed to indemnify him in case of indorsement, take away from him the discretion or option to indorse or not, at his pleasure? I cannot perceive.
There is, indeed, another material difference between this case and Corney v. Da Costa. Thére the indorser had taken from the maker, before the note became due, effects to the amount of the note, for the purpose of faying it; effects over which he had complete control; which were either available, or which he might render available before the note came to maturity. There, of course, he did not bear the brunt of the demand. The drawer’s effects went to pay it. They might be thrown into the market for what they would bring, to enable the indorser to take up the bill. But here the property remains in Edward’s hands. P. F. Boisseau has no power over it. It is but collateral security for his indemnity. It is not placed in his hands for the purpose of paying the debt. It is conveyed to a third person, a *213 trustee, the maker of the note still retaining possession, and it is never to be subjected to sale until the debt has been paid by, or demanded of, Peter F. Boisseau. Such a transaction can never be considered as “ placing effects in the hands of the indorser for the purpose of paying the debt.” The consequences would be mischievous indeed, if every indemnity taken by an indorser should at once convert him into principal debtor. Such an indemnity indeed, where it covers the whole effects of the debtor, may supersede the necessity of notice, as I was inclined to think in Watkins v. Crouch & Co. 5 Leigh 522. but it cannot justify his being treated as principal, and still less can it compel one who is not bound, to become bound absolutely and primarily, as indorser of the note of an insolvent man. The utmost that can be demanded of him is the release of his indemnity, or the transfer of it to those who may be equitably entitled to avail themselves of it.
I am, upon the whole, still of opinion to affirm the judgment.
Judgments in both cases affirmed.

 8th american edi. 1836.